IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Nicholas Sauer, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17 CV 50241 |
| v. | ) |
| | ) Judge Philip G. Reinhard |
| John R. Baldwin, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

For the following reasons, the court grants the motion to dismiss filed by Wexford Health Sources, Inc. without prejudice. However, before the court sets a date for plaintiff to file an amended complaint against Wexford Health Sources, Inc. (if he is able and so desires), the court orders all parties to contact Magistrate Judge Johnston's chambers within 30 days to schedule an early settlement conference.

## STATEMENT- OPINION

Plaintiff Nicholas Sauer ("plaintiff") brings this claim against Wexford Health Sources, Inc. ("Wexford"), Dr. Chamberlain,[1] nurse practitioners Tuell and Meshon, nurse Bode, Amber Allen, Ginger Davis, and Ms. McCluskey for claims pursuant to 42 U.S.C. § 1983 in connection with his medical care and treatment while incarcerated at the Illinois Department of Corrections, specifically Dixon Correctional Center.

On November 13, 2017, plaintiff filed his first amended complaint ("complaint") [12]. On March 5, 2018, Wexford filed a motion to dismiss plaintiff's claims against it for failure to state a claim [59]. Following a stay of the briefing of the motion, on July 25, 2018, plaintiff filed his response to Wexford's motion to dismiss [119]. On August 8, 2018, Wexford filed a reply to plaintiff's response [122]. Wexford's motion to dismiss is now ripe for the court's review.

In reviewing a party's motion to dismiss, the court is required to "accept as true all factual allegations in the [] complaint and draw all permissible inferences in the plaintiff's favor." *Alamo v. Bliss*, 864 F.3d 541, 548-49 (7th Cir. 2017) (internal quotations and alterations omitted). "A complaint will survive a motion to dismiss for failure to state a claim if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] Throughout the complaint, plaintiff spells Dr. Chamberlain's name "Chamberlin" and "Chamberlain." For purposes of this order, the court will spell his name "Chamberlain," the correct spelling, to the court's understanding.

678 (2009)). "That is, while a plaintiff need not plead detailed factual allegations to survive a motion to dismiss, []he still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for [his] complaint to be considered adequate." *Id*. (internal quotations and alterations omitted).

**Background**

The following facts are taken from plaintiff's first amended complaint.

Plaintiff, Nicholas Sauer, incarcerated in the Illinois Department of Corrections - Dixon Correctional Center - complains of a violation of his constitutional rights stemming from medical treatment he received following an accident on February 25, 2017. On that day, plaintiff was pushing an inmate in a wheelchair down a ramp (as part of his duties as a health care worker at Dixon) when he slipped and fell. Because of the fall, plaintiff severely twisted his back and neck, had a difficult time walking, and was in a tremendous amount of pain. Following this incident (it is unclear from the complaint how long after the incident), plaintiff sought medical treatment for his pain and was given a medical leave by the nurse. In late February or early March, plaintiff saw nurse practitioner Tuell, advised Tuell of his pain, and Tuell provide plaintiff with an additional medical leave but no pain medication.

On or about April 3, 2017, plaintiff was examined by Dr. Chamberlain who advised plaintiff he had a torn ligament or muscle and that his back would never be the same. Dr. Chamberlain ordered physical therapy for plaintiff's back and neck but did not provide him with pain medication. The next day, plaintiff had an x-ray on his back and neck. Plaintiff requested to see a specialist, but this request was denied by Dr. Chamberlain. On May 11, 2017, nurse practitioner Meshon provided plaintiff with a prescription for 600 mg of Ibuprofen and 500 mg of Robaxin (a pain reliever used to treat skeletal muscle conditions) for 60 days (an increase in medication plaintiff was already receiving for an unrelated injury). Plaintiff saw nurse Bode five days later and informed her he was out of his pain medication, that Dr. Chamberlain was indifferent to his medical needs, and that he was prepared to take legal action against Dr. Chamberlain. Due to this comment by plaintiff, nurse Bode kicked plaintiff out of the examination room and told plaintiff he would no longer be receiving medical care.

On or about May 31, 2017, plaintiff returned to sick-call complaining of continued pain and, against plaintiff's wishes, an unknown nurse tried to get plaintiff to sign a refusal of medical care. Two weeks later, on June 14, 2017, plaintiff began participating in physical therapy as ordered by Dr. Chamberlain. On June 20, 2017, plaintiff was again seen by nurse practitioner Meshon who advised plaintiff that she looks for two things in a patient: (1) can the patient make it to "chow"; and (2) is the patient going to die. Nurse Meshon then refused to treat plaintiff. Four days later, Dr. Obaisi examined plaintiff and recommended a spinal steroid injection. On June 27, 2017, nurse Tuell refused plaintiff's request for a sick-call. On July 7, 2017, plaintiff received a spinal steroid injection from Dr. Obaisi. Despite the injection, plaintiff continued to suffer pain.

On July 20, 2017, plaintiff went to the health center to pick up his prescribed eyeglasses. Plaintiff refused to accept the eyeglasses because they were not his prescribed "transition" lenses. As plaintiff was leaving the health center, McCluskey told him she was friends with nurse Bode and Amber Allen – the healthcare administrator – against whom plaintiff had pending grievances. The following day, plaintiff received three disciplinary tickets from McCluskey in retaliation for having filed grievances against nurse Bode and Allen. Plaintiff's several grievances concerning his claims of improper medical treatment have gone unanswered.

In Count II of plaintiff's complaint, plaintiff alleges he suffered injuries due to Wexford's actions and inactions.[2]

**Analysis**

In Count II of the complaint, plaintiff alleges Wexford, among other defendants,

"caused or failed to prevent, policies, practices and procedures which resulted in the disregard of the physical needs of inmates and/or denial of access to adequate medical care in that…Wexford

(1) failed to supervise… those persons employed or contracted to provide medical services to inmates;

(2) consistently failed to provide training to those persons employed or contracted to provide medical services to inmates;

(3) consistently failed to determine…whether those persons employed or contracted to provide medical services to inmates were in fact providing appropriate medical services to inmates; and

(4) consistently ignored whether those persons employed or contracted to provide medical services to inmates were in fact providing appropriate medical services to inmates."

Defendant Wexford argues in its motion to dismiss that plaintiff has failed to sufficiently plead that Wexford has violated plaintiff's constitutional rights pursuant to *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978), and that to the extent plaintiff has attempted to impute liability to Wexford based on the actions of it individual employees, Wexford should be dismissed from plaintiff's suit because there is no vicarious liability in a Section 1983 claim.

Liability attaches to Wexford only if it had an unconstitutional policy or practice that caused plaintiff's alleged constitutional deprivation. To state a claim under *Monell*, a

---

[2] Plaintiff does not name Wexford Health Sources, Inc. in Count I or Count III of his suit. Therefore, the court finds it unnecessary to analyze these claims as against Wexford.

plaintiff must allege that his constitutional violation was "caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with 'final policymaking authority.'" *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) (citations omitted). *See also Woodward v. Corr. Med. Servs. of Ill., Inc.* 368 F.3d 917, 927 (7th Cir. 2004). A corporate entity violates an inmate's constitutional rights "if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners." *Id*. at 927 (citations omitted). Plaintiff must allege "that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014).

Defendant Wexford argues in its motion to dismiss that plaintiff's *Monell* claim must fail because plaintiff has not sufficiently plead that Wexford implemented unconstitutional policies, practices or procedures that caused plaintiff a deprivation of his constitutional rights. Plaintiff counters his complaint sufficiently identifies a policy or practice responsible for his injuries, including Wexford's duty to supervise the medical services at Dixon as well as provide adequate training, and that those policies and practices were the cause of plaintiff's injury.

In order to prevail on his *Monell* claim against defendant Wexford, plaintiff must plead sufficient "factual content to nudge his claim…across the line from conceivable to plausible." *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th 2011) (citations and quotations omitted). "The plaintiff must [] show a direct causal connection between the policy or practice and his injury, in other words that the policy or custom was the moving force behind the constitutional violation." *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 675 (7th Cir. 2012) (citations and quotations omitted). Here, plaintiff's complaint alleges Wexford disregarded the medical needs of inmates and denied them proper access to care and failed to supervise or provide training to the medical providers at Dixon. In his brief, plaintiff cites to *Palmquist v. Selvik*, 111 F.3d 1332 (7th Cir. 1997), and *Marshall v. Fairman*, 951 F. Supp. 128 (N.D. Ill. 1997), to support his position. However, neither case is helpful to plaintiff's arguments. In *Palmquist*, the Seventh Circuit found, on the plaintiff's *Monell* claim, that "an allegation of failure to train is available only in limited circumstances," and that the evidence did not establish a civil rights violation through an alleged lack of training of police officers. *Palmquist*, 111 F.3d at 1344. In *Marshall*, the district court found that a defendant, who was a supervisor for a division of inmates at the Cook County Department of Corrections, was merely negligent and therefore the plaintiff could not bring an action against him under Section 1983. The court went on to say "[i]t would be a different matter if [defendant] had been on notice that his staff had been abusing prisoners and had turned a blind eye, but this has not been alleged." *Marshall*, 951 F. Supp. at 131. The facts here, as alleged by plaintiff, do not support a position that Wexford was on notice of its staff abusing prisoners at Dixon and turning a blind eye to this conduct. Neither *Palmquist* nor *Marshall* support plaintiff's arguments.[3]

---

[3] Plaintiff's reliance on *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), is also unavailing. There, the Seventh Circuit found that the claims against the Cook County Sheriff and the director

4

Plaintiff's conclusory allegations fail to "nudge his claim" over to plausible. The facts of plaintiff's complaint fail to support a theory that Wexford's policies or practices contributed to his poor medical care at Dixon. Nowhere in plaintiff's complaint does he equate his inadequate medical care to Wexford's failure to supervise or provide training. The complaint further does not support a conclusion that, due to Wexford, plaintiff was denied access to medical care. Indeed, plaintiff admits he was seen repeatedly by nurses and doctors, was given pain medication, physical therapy, and a steroid injection. Here, plaintiff's complaints regarding the amount of pain medication he was provided or the amount of time it took to receive physical therapy or a steroid injection, all fail to sufficiently allege a policy or widespread practice of unconstitutional actions on the part of Wexford. Plaintiff fails to identify sufficient facts in his complaint to plausibly support his *Monell* claim. Therefore, plaintiff's *Monell* claim against defendant Wexford (Count II) is dismissed.

To the extent plaintiff has brought a claim against Wexford through its employees who plaintiff has named as defendants and who provided medical services to inmates at Dixon, Wexford cannot be held vicariously liable under a *respondeat* superior theory of liability. The Seventh Circuit in *Shields* held that "*[r]espondeat superior* liability does not apply to private corporations under § 1983." *Shields*, 746 F.3d at 789. *See also Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 953 (7th Cir. 2018) (maintaining that Wexford, as a private corporation, "cannot be vicariously liable if its employees deprive others of their civil rights").

The court grants defendant Wexford's motion to dismiss without prejudice. However, before the court sets a deadline for plaintiff to file an amended complaint against Wexford Health Sources, Inc. (if he is able and so desires), the court orders all parties to contact Magistrate Judge Johnston's chambers within 30 days to schedule an early settlement conference given the nature of the allegations, various claims and multiple defendants sued.

Dated: 10/15/2018            ENTER:

_____
United States District Court Judge

Electronic Notices. (LC)

---

of the Cook County Department of Corrections properly alleged systemic violations for which the sheriff and the director were expected to have personal responsibility. *Id*. at 1429. Even if this court could find that Wexford would be responsible for systemic violations at Dixon, this has not been adequately alleged in plaintiff's complaint.